## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                    **INDICTMENT**

**DOMINIQUE J. STANBERRY**                   3:26 cr 52 - TKW

_____/

**THE GRAND JURY CHARGES:**

### COUNTS ONE AND TWO

### A.  INTRODUCTION

At all times material to this Indictment:

1.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2.      As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

FILED USDC FLND TL
APR 7 '26 PM3:48

<u>The Paycheck Protection Program</u>

3.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the SBA Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4.    In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application on an SBA Form 2483. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to certify, among other things, its: (a) average monthly payroll expenses, and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses and that they

2

were in business as of February 15, 2020. Further, businesses applying for a PPP loan were required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized, and not any duplicative, purposes.

5.    PPP loan applications were required to be signed by an authorized representative of the business. By signing PPP loan applications, applicants attested that the information provided in the application and in all supporting documents and forms was true and accurate, and that the applicant understood that knowingly making a false statement to obtain a PPP loan was a crime.

6.    PPP loan proceeds must have been used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and used at least 75% of the PPP loan proceeds on payroll expenses.

7.    A PPP loan application was required to be processed by a participating financial institution ("the lender"). If a PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the loan application, including information

3

about the borrower, the total amount of the loan, and the listed number of employees, was electronically transmitted by the lender to the SBA in the course of processing the loan.

## B.  THE CHARGE

Between on or about March 26, 2021, and on or about October 7, 2021, in the Northern District of Florida and elsewhere, the defendant,

### DOMINIQUE J. STANBERRY,

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, did cause a wire communication to be transmitted in interstate commerce.

## C.  SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

1.      The defendant, **DOMINIQUE J. STANBERRY ("STANBERRY")**, made and caused to be made false and fraudulent representations in a PPP loan application submitted online to Harvest Small Business Finance, LLC ("HSBF"), via Womply, in her name. Specifically, **STANBERRY** falsely represented that she had been self-employed with a business in her name since 2016 and that her self-employment earned an approximate gross income of $100,000 in 2020. In support of this fraudulent PPP loan application, **STANBERRY** electronically submitted

documentation to Womply, including a false 2020 Internal Revenue Service ("IRS") Schedule C, Profit or Loss from Business (Form 1040) form.

2.      **STANBERRY** caused HSBF to disburse PPP loan proceeds via electronic funds transfer to a Wells Fargo Bank account ending in 3973 under **STANBERRY**'s control. **STANBERRY** did not use the funds received for authorized business purposes as promised and instead converted the funds to her own personal use.

3.      By this conduct, **STANBERRY** fraudulently obtained approximately $20,833 in money and property to which she was not entitled.

## D.  WIRE COMMUNICATIONS

On or about the following dates, in the Northern District of Florida and elsewhere, the defendant,

## DOMINIQUE J. STANBERRY,

for the purpose of executing this scheme to defraud, did cause wire communications to be transmitted in interstate commerce as set forth below:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| ONE | March 26, 2021 | Transmission of PPP Borrower Application Form for Dominique Stanberry |
| TWO | April 14, 2021 | Electronic funds transfer of approximately $20,833 to Wells Fargo Bank account ending in 3973 |

In violation of Title 18, United States Code, Section 1343.

## CRIMINAL FORFEITURE

The allegations in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From the defendant's engagement in the violation alleged in Counts One and Two of this Indictment, the defendant,

## DOMINIQUE J. STANBERRY,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(2), Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all of the defendant's right, title, and interest in any property, real and personal, constituting and derived from proceeds traceable to such offenses.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    i.     cannot be located upon the exercise of due diligence;

    ii.    has been transferred or sold to, or deposited with, a third person;

    iii.   has been placed beyond the jurisdiction of this Court;

    iv.   has been substantially diminished in value; or

    v.    has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

_____
FOREPERSON

04/07/2026
DATE

JOHN P. HEEKIN
United States Attorney

ALICIA H. FORBES
Assistant United States Attorney

THOMAS S.P. GEEKER
Assistant United States Attorney

7